**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

COMPAQ COMPUTER CORPORATION,[1]

                              Plaintiff,

          -vs-                         DECISION AND ORDER
                                                   02-CV-6672-CJS

DARTNELL ENTERPRISES, INC.,

                              Defendant.

_____

**APPEARANCES**

For plaintiff:                          Beryl Nusbaum, Esq.
                                        William G. Bauer, Esq.
                                        Woods Oviatt Gilman LLP
                                        700 Crossroads Building
                                        Two State Street
                                        Rochester, NY 14614
                                        (585) 987-2800

                                        John F. Schultz, Esq.
                                        Kristofor T. Henning, Esq.
                                        Morgan, Lewis & Bockius LLP
                                        1701 Market Street
                                        Philadelphia, PA 19103-2921
                                        (215) 963-5385

For defendant:                       H. Todd Bullard, Esq.
                                        Carol Elizabeth Owens, Esq.
                                        The Bullard Lobban Law Group
                                        30 West Broad Street Suite 200
                                        Rochester, NY 14614
                                        (585) 325-3010

                                        Lorenzo Williams, Esq.
                                        Paul McMahon, Esq.
                                        W.E. Gary Professional Center

_____

[1]This is the original caption for the action begun in 2002. Compaq Computer Corporation was subsequently acquired by Hewlett Packard Company; however, the caption has not been amended.

320 South Indian River Drive
P.O. Box 3390
Fort Pierce, FL 34948-3390
(561) 464-2352

## INTRODUCTION

This matter is before the Court on a motion by plaintiff Hewlett-Packard Company (successor-in-interest to Compaq Computer Corporation), for a permanent injunction, pursuant to the All Writs Act, enjoining defendant Dartnell Enterprises, Inc. ("Dartnell") from pursuing its New York State lawsuit against Hewlett-Packard Company ("HP"), seeking damages under Massachusetts General Statutes 93A section 2 and 11.[2] For the reasons stated below, the motion is denied.January 12, 2007.

## BACKGROUND

From the state court complaint, attached as an exhibit to plaintiff's moving papers, the Court assumes the following as true for the purposes of this motion. HP is incorporated in the State of Delaware with its principal place of business in Palo Alto, California. HP is the successor in interest to Compaq Computer Corporation ("Compaq"), which had its principal place of business in Houston, Texas. Dartnell is also incorporated in Delaware, with its principal place of business in Rochester, New York. Also mentioned in the complaint is Digital Equipment Corporation ("DEC"), Dartnell's original business partner, which was purchased by Compaq in June 1998. Dartnell is a national distributor and reseller of computer products and provider of services, as well as contract labor. Thus, according to the state court complaint, HP is the successor in interest to both DEC and

---

[2]Massachusetts General Law, chapter 93A § 11 is the statutory provision for enforcing the rights granted by section two.

Compaq.

On March 30, 1998, DEC and Dartnell signed a release and settlement agreement, a copy of which is attached to the state court complaint as Exhibit A. Dartnell alleged that Compaq and its successor, HP, failed to implement the terms of the release and settlement agreement and, after months of negotiations, Compaq agreed to settle the matter in arbitration. In that regard, Dartnell and Compaq signed an arbitration agreement, governed by Massachusetts law, on November 12, 2001, a copy of which is attached to the state court complaint as Exhibit B. Dartnell is relying in its state court action on certain language in the arbitration agreement, which it contends preserved its right to bring a separate lawsuit against HP, as successor in interest to Compaq, with regard to the original breach of the 1998 settlement agreement. The language Dartnell relies on is as follows:

> 1. <u>Scope of Agreement</u>. The Parties agree to arbitrate all claims or disputes associated with or arising out of the performance of the 1998 Agreements. The Parties agree that the Settlement Agreement was a binding compromise and settlement of the disputes between the Parties that had arisen prior to the execution of the Settlement Agreement. The Parties acknowledge the validity of the Settlement Agreement, and acknowledge that the Settlement Agreement operated to release and settle any and all claims between the Parties that arose prior to its execution. The Parties therefore agree to arbitrate claims flowing from the Parties' conduct since the execution of the Settlement Agreement. For the purposes of this arbitration only, Compaq agrees not to contest that it breached certain provisions of the 1998 Agreements, for the purposes of assessing damages, if any, arising from any claimed breaches of the 1998 Agreements. Nothing in the foregoing sentence shall prevent Compaq from presenting facts or legal theories at the arbitration as to the amount of damages, if any, of any agreement breached. Further, for the purposes of this arbitration only, Campaq agrees to not assert any liability disclaimer, nor to assert the $1 million liability limit contained in the 1998 Agreements. [³Finally, for the purposes of this arbitration only, Dartnell agrees not to assert any claims based on oral

---

[3]The brackets here and at the end of this sentence appear to have been put in with pen and ink, since they do not appear in the typeface of the other portions of the document.

> arguments, promises or representations, including any claim to an exclusive distributorship for Compaq's federal Value Added Resellers, or any claims based on allegations of bad faith.] The foregoing sentence shall not limit either party's right (subject to applicable law or rules of evidence) to introduce oral evidence with respect to Dartnell's claims that Compaq breached the written terms of the 1998 Agreements.

(Arbitration Agreement ¶ 1 (attached to Schultz Decl. (# 38) as Ex. C).) One of the signatories to the Arbitration Agreement was H. Todd Bullard, counsel for Dartnell. On November 7, 2002, following a six-day evidentiary hearing, the arbitration panel of three lawyers, one of whom was a retired New York State judge, issued a final award in Dartnell's favor, a copy of which is attached to the state court complaint as Exhibit C. The arbitrators awarded Dartnell $15,030,000.00 as damages for Compaq's breach of contract. The Arbitration Award also addressed the issue of damages pursuant to chapter 93A of the General Law of Massachusetts and held that,

> In its Statement of Claim, Dartnell also presented tentatively a claim of violation of General Laws of Massachusetts, Chapter 93A, which prohibits "unfair or deceptive act[s] or practice[s]" in trade or commerce. This claim was not mentioned in Dartnell's Supplemental Statement of Claim, nor was it presented in the evidentiary hearing. Moreover, this claim is beyond the scope of the Arbitration Agreement (Exh. 1, par. 1). Dartnell's Chapter 93A claim, to whatever extent put forward, is denied.

(Arbitration Award (Compl. Ex. C) ¶ 9.)

On December 23, 2002, Compaq commenced an action before this Court seeking to vacate the Arbitration Award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10(a). In a Decision and Order entered on August 19, 2005, the Court determined that, contrary to Compaq's assertions, the arbitrators did not exceed their powers and that the award was not made in manifest disregard of the law. Accordingly, the Court granted Dartnell's cross-motion to confirm the Award and denied Compaq's motions to vacate the Award and

seal the file. (Decision and Order, *Compaq Computer Corporation v. Dartnell Enterprises, Inc.*, No. 02-CV-6672 CJS(F) (W.D.N.Y. Aug. 19, 2005).) Compaq did not appeal the decision.

Dartnell contends in paragraph 29 of its state court complaint that "[t]he Parties bifurcated their claims by agreement. The punitive and bad faith claims were bifurcated from the breach of contract claims and reserved." Further, Dartnell asserts in paragraph 30 of the state court complaint that "[t]he collateral claims involving bad faith under Gen. L. Mass., Chapter 93A were not resolved or otherwise made a part of the arbitration.… In addition, other claims related to oral agreements, promises or representations were not part of the arbitration." HP now seeks a permanent injunction on the theory that Dartnell's state court action, "is a clear attempt to undermine the Court's confirmation order and the arbitration award by treating the arbitration and this Court's order as stepping stones to additional litigation (*i.e*., its Massachusetts bad faith claim), instead of a final resolution of the parties' disputes." (HP's Mem. of Law (# 39) at 6.)

## STANDARDS OF LAW

### *The All Writs Act*

The All Writs Act is codified in the U.S. Code as follows:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C. § 1651 (1949). The Second Circuit has further addressed the applicability of the All Writs Act in *Ret. Sys. v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), stating

that,

> [t]he All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This grant of authority is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless that action is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

*Ret. Sys.*, 386 F.3d at 425 (footnote omitted) (quoting 28 U.S.C. §§ 1651(a) and 2283). As the Second Circuit has previously held, the Act authorizes a district court "to enjoin actions in state courts where necessary to prevent relitigation of an existing federal judgment." *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985). Addressing the Anti Injunction Act, the Supreme Court held in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988), that this provision, known as the "relitigation exception[,] was designed to permit a federal court to prevent state litigation of an issue that was previously presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo*, 486 U.S. at 147.

Interpreting this language from *Chick Kam Choo*, the Second Circuit held that the relitigation exception is narrower than the doctrine of res judicata, "'protecting only matters that actually have been decided by a federal court.'" *MLE Realty Assoc.*, 192 F.3d 259, 262 (2d Cir. 1999) (quoting *Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 (2d Cir. 1989)). In assessing whether an action presents the same claim as an earlier action, the Court must examine "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990); *see also Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir.

1991) ("It is the factual predicate of the several claims asserted that determines whether res judicata will apply, not a litigant's ability to devise a new legal theory.") (internal quotation marks omitted). As the Supreme Court stated in *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002), however, "[b]ecause the All Writs Act does not confer jurisdiction on the federal courts, it cannot confer the original jurisdiction required to support removal pursuant to § 1441." *Syngenta Crop Prot., Inc.*, 537 U.S. at 33. Issuance of an injunction under the All Writs Act is a matter of discretion for the district court. *Covanta Onondaga v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 395 (2d Cir. 2003).

***Massachusetts General Laws Chapter 93A***

Massachusetts General Law Chapter 93A reads in relevant part as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a) (2005). The Massachusetts Supreme Judicial Court has determined that,

> Chapter 93A, which was inserted by St. 1967, c. 813, § 1, is designated as the "Regulation of Business Practice and Consumer Protection Act." St. 1967, c. 813, § 2. This act is one of several legislative attempts in recent years to regulate business activities with the view to providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities.

*Commonwealth v. DeCotis*, 366 Mass. 234, 238, 316 N.E.2d 748, 752 (1974).

## ANALYSIS

HP argues that the All Writs Act permits this Court to enjoin the state court action in order to protect it's prior ruling confirming the arbitration Award. In *United States v. International Brotherhood of Teamsters, etc.*, 907 F.2d 277 (2d Cir. 1990), a case applying the All Writs Act, the Second Circuit decided that an order issued by a district court,

enjoining the parties from litigating issues in connection with a consent decree the district court had entered, was properly in aid of its jurisdiction and necessary to avoid inconsistent interpretations of the consent decree through future litigation. In another case involving an injunction issued under the All Writs Act and reviewed by the Second Circuit, the Court held that, "although this is a very close case, the district court's injunction was neither necessary nor appropriate to preserve the integrity of" its order and judgment. *Sheet Metal Contrs. Ass'n v. Sheet Metal Workers' Int'l Ass'n*, 157 F.3d 78, 84 (2d Cir. 1998).

As the Court observed during oral argument of HP's motion to dismiss the complaint against it in *Dartnell Enterprises, Inc. v. Hewlett Packard Company*, No. 05-CV-6437CJS (W.D.N.Y., Mar. 2, 2006), even if Dartnell were to commence a state court action, the Court would have to assess whether the complaint in that action would frustrate its prior order confirming the Arbitration Award. Now being squarely presented with the question, the Court concludes that the state court action that Dartnell has commenced does not frustrate this Court's prior order confirming the Arbitration Award. Despite HP's characterization of the state action as one that threatens to undermine the Court's prior determination, the present motion is essentially one to dismiss the state complaint based on principals of res judicata and collateral estoppel. HP has not persuaded the Court that issuance of an injunction is necessary to protect its prior ruling.

HP's reasoning is premised on the presumption that the Arbitration Agreement was designed so the parties could resolve *all* disputes between them arising from the Settlement Agreement and Release. Nowhere in its papers does HP address the meaning of the reservations both parties made in paragraph one of the Arbitration Agreement. In light of the entire context of the paragraph, the reservation language is, at best, ambiguous. If

Dartnell successfully reserved its right to bring a lawsuit under Massachusetts General Laws chapter 93A, then the state court can find that Dartnell's lawsuit may go forward. If, on the other hand, the proper interpretation of the reservation language in context is that Dartnell did not reserve its right to bring a lawsuit for damages under chapter 93A, then the state court can dismiss the complaint on the grounds of res judicata or collateral estoppel. In either situation, however, this Court's decision confirming the arbitration award would remain intact.

Moreover, HP argues that Dartnell is engaging in prohibited claim splitting. In this regard HP cites to *Ambase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003). However, that case is distinguishable. In *Ambase*, the Court of Appeals reviewed applicable Delaware law on res judicata and determined that the plaintiff's federal case was properly dismissed on that basis. The Second Circuit wrote in its opinion that

> when "a plaintiff has had a full, free and untrammelled opportunity to present his facts, but has neglected to present some of them or has failed to assert claims [that] should in fairness have been asserted, he will ordinarily be precluded by the doctrine of res judicata from subsequently pressing his omitted claim in a subsequent action."

*Ambase*, 326 F.3d at 73 (quoting *Maldonado v. Flynn*, 417 A.2d 378, 382 (Del. Ch. 1980) (internal quotation marks omitted in original). Here, Dartnell was specifically denied the opportunity to press its Massachusetts General Law chapter 93A claims in the arbitration proceeding. (Compaq's Response to Dartnell's Notice of Arbitration and Statement of Claim (Mar. 18, 2002), at 5 (attached to Schultz Decl. as Ex. E); Final Award of Arbitrators (Nov. 7, 2002) ¶ 9 (attached to Schultz Decl. as Ex. G).) Consequently, unlike the situation in *Ambase*, Dartnell was precluded by the Arbitration Agreement signed with Compaq from raising the claims for unfair or deceptive acts or practices in trade or commerce under

Massachusetts General Law chapter 93A.

HP also cites to *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), in support of their claim splitting argument. In that case, the Court of Appeals held that the Federal Arbitration Act "was enacted to promote the enforcement of privately entered agreements to arbitrate 'according to their terms.'" *Id*. (quoting *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 54 (1995) (internal quotation marks omitted)). If the Arbitration Agreement's terms were crystal clear, and supported HP's position, then HP would be entitled to the relief it seeks. The respective reservations in the Arbitration Agreement, however, are not that clear:

> For the purposes of this arbitration only, Compaq agrees not to contest that it breached certain provisions of the 1998 Agreements, for the purposes of assessing damages, if any, arising from any claimed breaches of the 1998 Agreements. Nothing in the foregoing sentence shall prevent Compaq from presenting facts or legal theories at the arbitration as to the amount of damages, if any, of any agreement breached. Further, for the purposes of this arbitration only, Campaq agrees to not assert any liability disclaimer, nor to assert the $1 million liability limit contained in the 1998 Agreements. [[4]Finally, *for the purposes of this arbitration only*, Dartnell agrees not to assert any claims based on oral arguments, promises or representations, including any claim to an exclusive distributorship for Compaq's federal Value Added Resellers, or any claims based on allegations of bad faith.]

(Arbitration Agreement ¶ 1 (emphasis added).) When considered in light of the arbitrators' decision that the chapter 93A claims were beyond the scope of the arbitration, HP's premise that the arbitration was to address *all* claims between Compaq and Dartnell is not persuasive.

HP also argues that Dartnell is engaging in "serial litigation" which is prohibited by

---

[4]The brackets here and at the end of this sentence appear to have been put in with pen and ink, since they do not appear in the typeface of the other portions of the document.

the "rational ends of law" and "the ends of justice." (HP's Mem. of Law (# 30) at 8.) However, once again, HP relies on the premise that the arbitration award "was intended to resolve all of the parties' disputes regarding a particular agreement," (*id*.) and that is precisely the issue Dartnell contends is not resolved by this Court's confirmation order.

In light of the questions going to the proper application of res judicata and collateral estoppel, and since this Court does not have any jurisdiction to entertain the question absent a threat to its prior order confirming the arbitration award, the Court will not address whether the arbitration award precludes Dartnell's state lawsuit. The Court is not convinced that its prior order confirming the arbitration award is threatened by the state litigation, and, consequently, determines that an injunction is not "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Therefore, the Court, in exercising its jurisdiction under the All Writs Act, declines to issue an injunction.

## CONCLUSION

Based on the foregoing, the Court decides in its discretion to deny HP's motion (# 37) for injunctive relief.

SO ORDERED.

Dated: January 12, 2007
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge